Filed 9/3/14  P. v. Wiley CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# **COPY**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C074988 |
| Plaintiff and Respondent, | (Super. Ct. No. NCR85811) |
| v. | |
| REBECCA LYNETTE WILEY, | |
| Defendant and Appellant. | |

Defendant Rebecca Lynette Wiley pleaded guilty to child endangerment (Pen. Code, § 273a, subd. (a); count I; unless otherwise stated, statutory references that follow are to the Penal Code) and transportation of hydrocodone (Health & Saf. Code, § 11352, subd. (a); count II).  She admitted a 2001 first degree burglary strike conviction as to count I.  (§§ 459, 460, subd. (a), 667, subds. (b)-(i), 1170.12.)  In return for her guilty plea, five related counts and a prior prison term allegation were dismissed.  Defendant's invitation to dismiss the strike conviction for purposes of sentencing was denied.

1

(*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).) She was sentenced to prison for nine years four months and was awarded 219 days' custody credit and 219 days' conduct credit.

On appeal, defendant contends (1) the denial of her *Romero* motion was an abuse of discretion, and (2) the abstract of judgment must be corrected to reflect the foregoing custody credits; the People concede this latter point. We affirm the judgment and order the correction.

FACTS AND PROCEEDINGS

Because the matter was resolved by plea, our statement of facts is taken from the probation officer's report.

On December 21, 2013, a Red Bluff Police Officer arrived at the location of a noninjury accident. He contacted defendant who told him she had been driving westbound on Antelope Boulevard when she ran into the back of a man's pickup truck. Her friend's nine-year-old daughter was her passenger at the time of the collision. She told the officer that she did not see the truck and did not know if her traffic signal was red or green.

The officer noticed that defendant was under the influence of a drug. He asked when she last had used methamphetamine, and she said, "three days ago." She said she had smoked an $80 bag. The officer asked if she had felt the effect of the drugs. She replied, " '[w]ell, I didn't think so.' "

The officer searched defendant's purse and found 17 syringes, two grams of methamphetamine, 10 hydrocodone pills, 19 methadone pills, and a glass smoking pipe. Defendant planned to sell or give away the pills.

In further conversation with the officer, defendant said she had smoked a "bowl" of methamphetamine three hours before the collision.

The girl was taken home and released to her mother.

2

DISCUSSION

I

*Romero*

Defendant contends the trial court's refusal to dismiss her 2001 prior burglary conviction for purposes of sentencing was an abuse of discretion. She claims she fell outside the spirit of the "Three Strikes" law because, (1) the 2001 strike offense occurred more than 12 years earlier when she was only 29 years old; (2) she had been "free of serious crime since 2001" in that her subsequent criminal record consisted of misdemeanor battery in 2008, grand theft in 2010, and the present convictions; and (3) dismissal would have allowed her to be placed on probation through the adult felon drug court.

Defendant filed a written invitation to dismiss the strike allegation for purposes of sentencing. The invitation argued that the strike offense was (1) dated and was more serious than the present offense; (2) in the present offense she was not armed, caused no physical harm or injury, and showed little criminal sophistication; (3) she is a suitable candidate for probation; (5) she would not benefit from imprisonment; and (6) her future prospects are hopeful.

The prosecution filed opposition that highlighted defendant's criminal record. In 1987 and 1988, she had two juvenile adjudications and a probation violation in each matter. In 2001, she had felony convictions of possession of a controlled substance for sale, two counts of second degree burglary, and the count of first degree burglary that was the subject of the *Romero* request. In 2008, she had a misdemeanor conviction of battery. In 2010, she had her fifth felony conviction: grand theft by use of an access card. Defendant was sentenced to prison for three years and was on postrelease community supervision at the time of the present offenses. She was 41 years old at the time of sentencing.

In its ruling denying the *Romero* request, the trial court said:

"The Court has read and considered the moving papers along with the opposition, and it really is under *Romero* and *Williams* a situation where the Court has to review the -- in light of the nature and circumstances--all of the present felonies and the prior convictions and the defendant's background, character, and prospects. And what it comes down to is whether or not she should be deemed to be outside the scheme, spirit, the *three strikes indeterminate issues* in this case and should be treated as though she had not been convicted of one or more of the prior felonies.

"The Court certainly would take counsel's argument into consideration in full if you were to say, well, in this matter she only has the felonies. Well, the problem is she has more than just *those strike felonies, back in '01* and after she had been released she then ended up having in 2008 a misdemeanor battery charge, which is certainly not the end of the story and is not the end of the story for her as far as a *Romero* motion, but then you come to 2010 and she then gets another felony in Tehama County for which she served three years in state prison for grand theft.

"As such, the Court certainly does not find that her background and prospects are such that she should be deemed to be outside the spirit of the Three Strikes law. As such, the *Romero* motion is denied." (Italics added.)

A trial court has discretion to dismiss a prior serious felony conviction for purposes of sentencing only if the defendant falls outside the spirit of the Three Strikes law. (§ 1385; *People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*); *Romero, supra,* 13 Cal.4th at pp. 529-530.) In ruling on a *Romero* motion, the court "must consider whether, in light of the nature and circumstances of [her] present felonies and prior serious and/or violent felony convictions, and the particulars of [her] background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though [she] had not previously been convicted of one or more serious and/or violent felonies." (*Williams, supra,* at p. 161.)

4

The court's discretion is limited by the concept of "furtherance of justice," requiring the court to consider both the defendant's constitutional rights and the interests of society. (*Romero, supra,* 13 Cal.4th at p. 530.)  Dismissal of a strike is a departure from the sentencing norm.  That is, " 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though [she] actually fell outside the Three Strikes scheme." ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).)

We will not reverse the ruling on a *Romero* motion for an abuse of discretion unless the defendant shows that the decision was "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony, supra,* 33 Cal.4th at p. 377.)  Reversal is justified where the trial court was unaware of its discretion to strike a prior strike or refused to do so, at least in part, for impermissible reasons.  (*Id.* at p. 378.)  But where the trial court was aware of its discretion, " 'balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling . . . .' [Citation]." (*Ibid.*)

It is defendant's burden to affirmatively establish that the " ' "the sentencing decision was irrational or arbitrary. [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.]" (*Carmony, supra,* 33 Cal.4th at pp. 376-377.)

The forfeiture doctrine applies to claims "involving the trial court's failure to properly make or articulate its discretionary sentencing choices.  Included in this category are cases in which the stated reasons allegedly do not apply to the particular case." (*People* v. *Scott* (1994) 9 Cal.4th 331, 353 (*Scott*).)

5

The plea agreement provided for a prison term between five years four months and 13 years four months. Defendant's *Romero* contention does not attack her plea and does not require a certificate of probable cause.

In denying defendant's *Romero* request, the trial court stated two reasons that arguably do not apply to this case. First, the court made vague reference to "three strikes indeterminate issues," even though no issue of indeterminate sentencing arises in this second-strike case. Second, the court referred to "those strike felonies, back in '01," even though only *one* of the four 2001 felonies--the first degree burglary that is the subject of the *Romero* request--had been a strike. Defendant claims the trial court's decision to deny the *Romero* request was "based on inaccurate information," but her failure to object on that ground in the trial court forfeits any error on appeal. (*Scott, supra,* 9 Cal.4th at pp. 352-353, fn. 15.)

In any event, the trial court made plain its belief that defendant's 2001 felonies and 2008 misdemeanor were "not the end of the story," such that they precluded *Romero* relief. Rather, the "story" did not "end" until defendant's 2010 felony conviction and three-year prison sentence. Even if the court believed that defendant's 2001 conduct was more severe than it actually was, the court did not rely on that mistaken belief when it denied the *Romero* request.

Defendant acknowledges that the trial court stated "what factors should be considered" when evaluating a *Romero* request, but she claims "there is no indication the court actually took [her] 'background, character and prospects' into consideration." Her failure to raise this point at sentencing, when the court could have elaborated on the disputed points, forfeits the claim on appeal. (*Scott, supra,* 9 Cal.4th at pp. 352-353, fn. 15.) In any event, the trial court stated that it "does not find that [defendant's] background and prospects are such that she should be deemed to be outside the spirit of the Three Strikes law." The court's mere failure to mention defendant's character does not mean that it failed to properly rule on the request.

6

Defendant claims her criminal history was less egregious than that of the defendant in *Williams, supra*, 17 Cal.4th 148. She is correct, in that *Williams* was a third strike case; but she is not assisted, because *Williams* nowhere suggests that her criminal history fails to support a second strike sentence.

Defendant claims her 2001 convictions "all arose from a single period of aberrant behavior related to drug use and abuse." The probation report shows that the 2001 strike burglary was accompanied by two other burglaries and possession of a controlled substance for sale, all within a period of six days.

But even if the offenses were confined to a single period, the surrounding drug abuse was not. Defendant used marijuana in junior high and high schools. She first tried methamphetamine at age 14 and felt addicted to the drug through age 17. She stopped using the drug following a motorcycle accident, but she resumed using it in 1998. Her usage became a "significant problem" after her divorce in 1999.

Thus, even if defendant's 2001 criminal offenses arose within a brief period of time, they arose from a lengthy pattern of drug abuse that cannot be dismissed as an aberration.

Defendant argues her "severe drug addiction" militated "against a second strike sentence." But her only successful rehabilitation occurred when she received "a year of substance abuse treatment while incarcerated" for the 2001 felonies. Although defendant was "looking forward to" additional treatment following her 2010 imprisonment, she evidently failed to obtain it in the Red Bluff area to which she was released. This record does not compel a finding that the second strike sentence would hinder, rather than facilitate, defendant's return to substance abuse treatment.

Defendant notes that, following her 2001 strike conviction, she was "free of any felonious conduct" for a period of nine years. Perhaps for that reason, her 2010 felony was not sentenced as a second strike. But the present offenses occurred while defendant was on postrelease community supervision for the 2010 felony. The Three Strikes law

7

was intended to deter this sort of prompt recidivism.  Defendant's argument that she is outside the scheme's spirit has no merit.

Defendant claims there were "no allegations in the record" that anyone was physically harmed by any of her conduct.  But "the nonviolent or nonthreatening nature of the felony cannot alone take the crime outside the spirit of" the Three Strikes law.  (*People v. Strong* (2001) 87 Cal.App.4th 328, 344.)  In any event, it was only by good fortune that the collision was not sufficiently violent to physically harm the nine-year-old passenger or another person.

Defendant argues her "circumstances indicated [she] *could be* outside the spirit of the Three Strikes law, at least 'in part.' "  (Italics added.)  We construe this passage as suggesting the trial court *could have* found her to be outside the scheme's spirit.  But defendant's burden is much greater than to show that the court could have made a different ruling.  Defendant must show that the decision was "so irrational or arbitrary that no reasonable person could agree with it."  (*Carmony, supra,* 33 Cal.4th at p. 377.)  This she has not done.

II

*Correction of Abstract of Judgment*

Defendant contends, and the People concede, the abstract of judgment must be corrected to accurately reflect the trial court's oral pronouncement of judgment.  We accept the People's concession.

The trial court did not address the issue of presentence credits at the original sentencing hearing on October 7, 2013.  When the matter was put back on calendar on October 21, 2013, the trial court stated:  "As of the date of the [probation] report which anticipated sentencing on September 16th, 2013, [defendant] had 198 [custody] and 198 conduct credits.  The sentencing did not go forward until October 7th, so she has

8

additional credits and those would be 219 [custody] and 219 conduct credits for a total of 438."

The abstract of judgment does not reflect the trial court's oral pronouncement of additional custody and conduct credits. The abstract must be corrected to accurately reflect the oral pronouncement of 219 days' custody credit and 219 days' conduct credit. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.)

DISPOSITION

The judgment is affirmed. The trial court is directed to correct the abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.


      HULL      , J.


We concur:


      NICHOLSON      , Acting P. J.


      MURRAY      , J.

9